# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **ROBERT J. KLEBE** | § | |
| | § | |
| **V.** | § | **A-08-CA-091 AWA** |
| | § | |
| **UNIVERSITY OF TEXAS SYSTEM,** | § | |
| **and UNIVERSITY OF TEXAS HEALTH** | § | |
| **SCIENCE CENTER AT SAN ANTONIO** | § | |

## ORDER

Before the Court are Defendants' Motion to Exclude Second Expert Report and Intended Testimony of Nini, filed March 6, 2009 (Clerk's Doc. No. 81); Plaintiff's Response to Defendants' Motion to Exclude Second Expert Report and Intended Testimony of Nini, filed March 9, 2009 (Clerk's Doc. No. 82); Defendants' Reply in Support of Defendants' Motion to Exclude Second Expert Report and Intended Testimony of Nini, filed March 12, 2009 (Clerk's Doc. No. 88); and Plaintiff's Advisory to the Court, filed February 9, 2009 (Clerk's Doc. No. 64).

## BACKGROUND

These motions present the question of whether Plaintiff's 2003 pay-cut claim has been revived by the passage of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (the "Act"). Prior to the Act's passage, in the Court's summary judgment ruling, the undersigned noted that the Third Court of Appeals had decided that the Plaintiff's Texas Labor Code claim arising out of the reduction in his salary in 2003 was time-barred because he had not filed a timely charge of discrimination on that claim. The undersigned stated that he was bound by this ruling, as it was law of the case, and thus the age discrimination claims arising out of the salary cut were not actionable, although other actions related to Dr. Klebe's salary after that time (such as the failure to provide cost

of living-type adjustments) remained viable. The Court further stated that the expert damage testimony must align with these rulings.

On March 13, 2009, the Court held the final pre-trial conference for this case. Prior to this conference, the Court issued an order notifying the parties that it would take up at the conference Plaintiff's assertion that the Act revives Plaintiff's claims stemming from the initial pay-cut that the Court previously held were time-barred. *See* Clerk's Doc. No. 87. After hearing argument and considering the briefing on the issue, the Court announced orally that it agreed with Plaintiff's position that the claims were indeed revived by the Act. The trial then began as scheduled on March 23, 2009; however for medical reasons the case had to be postponed. On April 6, 2009, when the case could still not go forward, the Court declared a mistrial, and reset the case for jury selection and trial on May 26, 2009. On April 28, 2009, Plaintiff filed his Second Amended Motion for Continuance, and on May 14, 2009, the Court granted the motion and reset the case for jury selection and trial on August 31, 2009. The purpose of this order is simply to reduce to writing the Court's oral ruling on this issue, as stated on the record at the final pre-trial conference on March 13, 2009.

## DISCUSSION

The issue presented to the Court in the motion is whether the Act applies to Dr. Klebe's state law discrimination claims. If applicable to this case, the effect of the amendment would be that, assuming the Defendant's decision to lower Dr. Klebe's compensation was a discriminatory practice, each time Dr. Klebe received a pay check for the reduced salary, an unlawful practice "occurred." This would mean that the Third Court of Appeals' ruling—followed and applied by this Court—would in effect be reversed, and Dr. Klebe's claims would not be time-barred.

Deciding this question would be a simple exercise were Klebe's claims brought under Title VII. The Act reversed the construction of Title VII (and the ADEA and other federal anti-discrimination laws) adopted by the Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Specifically referring to *Ledbetter* in the Act, Congress stated that the "decision undermines [statutory anti-discrimination] protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress." Thus, Congress stated that it passed the Act "to clarify that a discriminatory compensation decision or other practice that is unlawful under [Title VII, the ADEA, the ADA or the Rehabilitation Act] occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice." Specifically, the Act provides that an unlawful practice "occurs" for purposes of § 7(d) of the ADEA (29 U.S.C. § 626(d)) when, among other things, "a person is affected by application of a discriminatory compensation decision . . . including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

By its terms, the Act applies retroactively "as if enacted on May 28, 2007," and applies to "all claims of discrimination . . . that are pending on or after that date." This case was filed on May 16, 2007, and remains pending now. Thus, the Act clearly would apply to this case had Dr. Klebe brought suit under Title VII, and several courts have recently reached this same conclusion in similar cases. *See Gentry v. Jackson State University*, 610 F. Supp. 2d 564, 566–67 (S.D. Miss. 2009); *see also Bush v. Orange County Corrections Dept.*, 597 F. Supp. 2d 1293, 1295 (M.D. Fla. 2009) (holding that while plaintiffs' complaint about demotions and pay reductions that occurred sixteen years before EEOC charge was filed would plainly be barred under Supreme Court's *Ledbetter*

3

decision, "with the passage of the [Lilly Ledbetter Fair Pay Act] Plaintiffs' Title VII claims [were] no longer administratively barred").

However, Plaintiff is not bringing his claims under Title VII. Rather, he is asserting claims under the Texas Commission on Human Rights Act ("TCHRA"). The Court must therefore determine whether Texas courts would look to the Act to decide when a TCHRA claim "occurred" for statute of limitation purposes. It is significant to note that when the Third Court of Appeals was faced with the task of determining when the alleged unlawful employment decision "occurred" under the TCHRA, the court looked to federal precedent for guidance in interpreting the Texas Act. *See Klebe v. Univ. of Tex. Sys.*, No. 03-05-00527-CV, 2007 WL 2214344, at *3 (Tex. App.—Austin July 31, 2007, no pet.). The Third Court concluded that "the limitation period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision 'comes to fruition,'" and it cited *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) in support of that proposition. *Id.* When one looks at the cited page of *Specialty Retailers*, the following statement appears:

> The court of appeals failed to distinguish between an act of continuing discrimination and an effect of past discrimination. The United States Supreme Court has held that in discrimination cases, "'[t]he proper focus is upon the time of the *discriminatory* acts, not upon the time at which the *consequences* of the acts become most painful.'" *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (emphasis in original).

*Id.* That portion of the Texas Supreme Court's decision continues to rely on federal law (specifically the *Ricks* case) throughout. Significantly, in *Ledbetter*, the U.S. Supreme Court also relied on *Ricks* in holding that an unlawful employment practice occurs, and the EEOC charging period is triggered, when a discrete unlawful practice takes place, not when the effects of that past discrimination are felt.

4

*Ledbetter*, 550 U.S. at 628. Thus, in *Klebe* and *Ledbetter*, both the Third Court, construing the Texas statute, and the Supreme Court, construing the federal statute, looked to the *Ricks* decision in deciding when a discrimination claim accrues. And *Ricks*, as an earlier statement of the *Ledbetter* ruling, is no longer a correct statement of the law after the adoption of the Act. Thus, for the same reasons that *Ledbetter* is no longer good law, the Third Court's decision in *Klebe* would also seem to be undermined by the passage of the Act.

The language of the Texas statute supports this conclusion as well. In adopting that act, the Texas legislature stated that one of its express purposes was to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE § 21.001(1). *See also NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) ("The Texas Commission on Human Rights Act is modeled after federal civil rights law. . . . The Act purports to correlate 'state law with federal law in the area of discrimination in employment.' Thus, in light of the Legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act."). Because the Texas legislature intended for the TCHRA to provide for the execution of the "policies" of Title VII, "*and its subsequent amendments*," it seems evident that Texas courts would look to the Ledbetter Act, which amended Title VII, in deciding when a discrimination claim under the TCHRA accrues.

It is true that when there are differences between the two acts, Texas courts will not apply the different federal provisions—or federal case law interpreting those provisions—to the state statute. *See, e.g.*, *Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000) (noting differences between the state and federal statutes). In other words, when there are differences in the state and federal statutes, courts will apply the appropriate rule to the case. *See Pope v. MCI Telecomm.*

5

*Corp.*, 937 F.2d 258, 264 (5th Cir. 1991) (holding that state law claims are governed by state, not federal, limitations periods). However, the issue here is not the length of the period to file a charge of discrimination under the Texas Labor Code, but rather *when* the unlawful employment practice "occurred" under the Texas Labor Code such that the charge period begins to run. And as to this question, the Texas statute is silent. This is why Texas courts have looked to case law, and particularly federal case law, to determine when an unlawful employment practice "occurs" under the TCHRA. As discussed above, this is precisely what the Third Court of Appeals did when it held that Klebe's claim on the initial pay cut was time-barred because he had not filed a timely charge of discrimination on that claim. *See Klebe*, 2007 WL 2214344, at *3. As for Defendant's arguments as to what the current Texas legislature would think on the issue, or what the current governor would think, this is not a matter the Court need be concerned with, as the job of the Court is to interpret the statute as written. And to this point, the Legislature has spoken by saying the purpose of the Act is to work in parallel with Title VII and its amendments. TEX. LAB. CODE § 21.001(1). Given this, and given that the Ledbetter Act unequivocally states Congress' intention with regard to when a compensation-based discrimination claim accrues under Title VII, a Texas court faced with this issue would plainly do what the federal courts that have faced the issue have done—apply the Ledbetter Act. *See Gentry*, 610 F. Supp. 2d at 566–67; *Bush*, 597 F. Supp. 2d at 1295. Indeed, the process followed by the Third Court of Appeals in resolving this very issue in this case was to look to federal law. Given that the Ledbetter Act revised the federal case law previously relied upon, this is additional evidence that the Ledbetter Act would be looked to by Texas courts as authoritative on this question.

Applying the Act to the facts of this case means that Plaintiff's claims arising out of wages received within two years of the date he filed his charge of discrimination are timely and may be pursued at trial. TEX. LAB. CODE § 21.258 (c) ("Liability under a back pay award may not accrue for a date more than two years before the date a complaint is filed with the commission."). The charge of discrimination in this case was filed on August 24, 2006, and thus Plaintiff may seek relief for any underpayment of wages he contends was the result of discrimination back to the date of August 24, 2004. Thus, the Court will permit expert testimony regarding damages during this time period.

## CONCLUSION

For all of these reasons, and consistent with the Court's ruling in open court on March 13, 2009, Defendants' Motion to Exclude Second Expert Report and Intended Testimony of Nini, filed March 6, 2009 (Clerk's Doc. No. 81) is DENIED as set forth herein.

SIGNED this 3rd day of August, 2009.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE