IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ROBERT J. KLEBE** § | |
| § | |
| V. § | A-08-CA-091  AWA |
| § | |
| **UNIVERSITY OF TEXAS HEALTH** § | |
| **SCIENCE CENTER AT SAN ANTONIO** § | |

## ORDER

Before the Court are Plaintiff's Verified Application for Attorney's Fees and Expenses, filed January 12, 2010 (Clerk's Doc. No. 212); Defendant's Objections to Plaintiff Dr. Robert Klebe's Application for Attorneys' Fees & Expenses, filed January 26, 2010 (Clerk's Doc. No. 217); Plaintiff's Reply in Support of Application for Attorney Fees, filed February 4, 2010 (Clerk's Doc. No. 221); Defendant's Surreply (Clerk's Doc. No. 223); and Plaintiff's Summary Billing Statements, filed March 12, 2010 (Clerk's Doc. No. 226).

On December 23, 2009, the Court entered Final Judgment in this case for Plaintiff Robert Klebe ("Dr. Klebe") on his claim of retaliation brought under the Texas Labor Code. In the Judgment, Dr. Klebe was awarded $300,000 in mental anguish damages, as well as certain equitable relief. Dr. Klebe has now filed the instant motion seeking $422,604.04 in attorney's fees for the work done by Judge Kostura & Putman P.C., Robert Willman and William Hulsey, plus additional fees if the Defendant takes certain post-trial actions. The motion further seeks $22,107.07 in expenses.

Defendant University of Texas Health Science Center San Antonio ("the University") has filed objections to Dr. Klebe's application for attorney's fees and expenses, arguing that the request for attorney's fees is excessive and unreasonable, in large part because he has failed to segregate the

fees attributable to the retaliation claim from the rest of the unsuccessful claims in this case.[1] In addition, the University contends that Dr. Klebe is not entitled to be reimbursed for many of the expenses included on the expense billing statement, including expert fees, deposition costs, travel costs, meals, and overhead.

## I.  ATTORNEY'S FEES

**A.**    **Applicable law**

In cases where state law supplies the rule of decision, that state's law also controls the award of attorney's fees. *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005). Under Texas law, a prevailing party may recover reasonable attorney's fees as a part of the costs. TEX. LABOR CODE § 21.259. "The general rule regarding the recovery of fees in Texas is that 'fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)). The party seeking attorney's fees carries the burden of proof, which includes the duty to segregate recoverable fees from those that are not recoverable. *Smith v. United Nat'l Bank-Denton*, 966 F.2d 973, 978 (5th Cir. 1992).

Both the Fifth Circuit and Texas courts use the lodestar method for calculating attorney's fees, which involves determining the reasonable hourly rate for those working on the case, determining the number of hours "reasonably expended" on the case, and then multiplying those numbers to determine the lodestar figure. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th

---

[1] As the University correctly explains in its surreply, these objections were timely filed. Thus, the Court will not grant the application as unopposed as Plaintiff requests.

Cir. 2008). In determining whether the amount of time expended on a matter is reasonable, courts are to review time records supplied by the movant and exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). The court must then consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

**B.     Procedural History**

This case has a tortured procedural history. Plaintiff originally filed suit in state court on October 22, 2004, pursuing state law age discrimination, breach of contract, and takings claims, and also arguing that his "tenure rights" were violated by the University's actions. While pending in state court, the trial judge dismissed as time barred Dr. Klebe's age discrimination claim regarding his 2003 pay cut. Plaintiff filed an interlocutory appeal of that decision on August 5, 2005, and while that appeal remained on the docket of the Third Court of Appeals in Austin, Dr. Klebe filed a second state court lawsuit, complaining that actions of the Post Tenure Review Committee were discriminatory and retaliatory, and again raising breach of contract, takings, and tenure rights claims. On July 31, 2007, after a two-year delay, the Third Court affirmed the statute of limitations ruling on the state law age discrimination claim brought in the first suit.[2] Dr. Klebe then sought to consolidate the two actions, and in January 2008 filed an amended consolidated petition which, for the first time, (1) stated a claim that the University's actions constituted not only a taking under the

---

[2]After the case was pending in this court, this time-barred age discrimination claim was revived in part by the passage of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. *See* Clerk's Doc. No. 125.

Texas constitution, but also violated his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, and (2) raised a claim under § 1983 for violating his "constitutionally guaranteed and tenured property rights." Based on these federal law claims, the University removed the case to this court on January 31, 2008.

After removal, all but the state age discrimination and retaliation claims were dismissed on summary judgment. The claims that remained for trial were essentially four: (1) Dr. Klebe's claim that the University committed age discrimination by (a) cutting his salary, and (b) keeping his salary constant; and (2) his claim that the University retaliated against him by (a) keeping his salary constant, and (b) giving him negative PTEC reviews in 2006 and 2008. The case went to trial in 2009, and a jury found against Dr. Klebe on both age discrimination claims, and found in his favor on both retaliation claims.[3] On the first retaliation claim (related to keeping his salary flat), while the jury found this to be retaliatory, it also found that the University would have taken this action even if it had not acted on its retaliatory motive. On the other retaliation claim (based on the unfavorable PTEC reviews), the jury found that retaliation was the University's sole motive, and while the jury awarded Dr. Klebe no back pay for this retaliation, it awarded him $900,000 in mental anguish damages for it.

The Court then granted a partial new trial, finding that this $900,000 was not supported by the evidence. After the new trial, which was limited to the issue of whether Dr. Klebe suffered any mental anguish as a result of the PTEC reviews, the jury found that Dr. Klebe was entitled to

---

[3]There were actually three juries that heard at least a portion of this case. The first jury heard evidence for a day in March 2009, but did not reach a verdict as it was dismissed after Dr. Klebe suffered a stroke. The second trial commenced on August 31, 2009. The third trial, discussed below, commenced on November 20, 2009.

$400,000 for the mental anguish he suffered from the 2006 and 2008 PTEC reviews. Following this verdict, the Court entered judgment for Dr. Klebe at the statutorily capped sum of $300,000. The issue of the appropriate amount of attorneys and fees and costs is now before the Court.

## C.    Calculating Attorney's Fees

### 1.    Segregation of work on successful and unsuccessful claims

Dr. Klebe's application for attorney's fees divides the work spent on this case into four "phases" of the litigation, and then divides each of the phases into categories of work performed during each phase. Attached to the application is a billing statement of the hours spent on the case from August 5, 2004, through January 4, 2010. The final total of hours is 1742.10 hours,[4] and the total dollar amount sought for these hours is $360,208.75.[5] At the Court's direction, Plaintiff has also submitted a summary billing statement that breaks down the time spent by timekeeper, by month.

The $360,000-plus figure sought by Dr. Klebe represents compensation for all of the work Dr. Klebe's attorneys did over the entire five-plus-year course of this litigation, including time spent long before the University's actions giving rise to the compensable claim even occurred. In the submittal, Dr. Klebe's counsel does not attempt to identify the work he did on the successful claim, and segregate it from the work done on the unsuccessful claims. Instead, he argues that he is entitled to fees for all of the work he did on all of the claims, though he does concede that fees for work on

---

[4]This includes time spent by lawyers, paralegals, and staff. According to the summary billing statement provided by Dr. Klebe, attorney hours totaled 1,093.4 hours, and paralegal hours totaled 677.50 hours.

[5]This is the amount sought before considering any enhancement to the lodestar amount. Plaintiff argues that he should be awarded $422,604.04 after enhancements to the lodestar amount are applied.

the unsuccessful claims should be reduced slightly, and contends that the fees for work on the successful claim (including work to prove up his damages on that claim) should be enhanced. The University does not contest that Dr. Klebe is entitled to attorney's fees for the retaliation claim, nor does it object to the hourly rate to be used in calculating these fees. The University does, however, object to the total number of hours included in the request because it argues many of these hours were spent preparing for claims that Dr. Klebe did not prevail on, and which were unrelated to his successful claim.

Only a prevailing party is entitled to seek fees under § 21.259. Because Dr. Klebe prevailed on only one of the many claims he asserted during the five-and-a-half year history of this case, the Court does not believe it would be an appropriate exercise of its discretion to award the entire amount requested by Plaintiff.[6] Plaintiff contends that the work his attorneys did on the claim on which he prevailed was "inextricably intertwined" with the work done on all of the other, unsuccessful claims he brought. Plaintiff offers little in support of this assertion, however, other than arguing that had the other claims not been filed in the first instance, the retaliation claim would never have been actionable. He says, for example:

> In a word, Plaintiff would not have a retaliation case, if it were not for the work his lawyers did prosecuting his age discrimination and property rights claims that gave rise to the actionable retaliation. Plaintiff's Reply in Support of Application for Attorney Fees, Clerk's Doc. No. 221, at 6.

---

[6]In Plaintiff's most recent Advisory filed with the Court, he "reminds the Court that he prevailed on both the issues of retaliation and mental anguish damages, and further that mental anguish damages was an active and contested issue in the case from beginning to end." But "mental anguish damages" is not a cause of action—it is one element of the compensable damages one may recover for the one claim on which Dr. Klebe prevailed. Thus, when the Court refers to the "retaliation claim" in this order, it is referring to all aspects of that cause of action, including proof of damages resulting from the retaliation.

and

> If the unsuccessful claims had not been diligently pursued, there would have been no retaliation and mental anguish claims. Plaintiff's Summary Billing Statements, Clerk's Doc. No. 226, at 2.

But these statements are simply incorrect. A retaliation claim stands on its own. Indeed, as demonstrated by this case, a plaintiff need not prevail on (much less pursue) an underlying discrimination claim to prevail on a retaliation claim. Rather, all that is required to state a claim for retaliation is that the plaintiff engaged in "protected activity," which may include as little as asserting a claim of discrimination, or testifying as a witness related to someone else's discrimination claim. Fully litigating a discrimination claim—much less doing so to an unsuccessful conclusion—is far from necessary, as Dr. Klebe seems to suggest.

Other courts have reached the same conclusion. For example, the Seventh Circuit has recognized that "a claim of discrimination and a claim of retaliation for opposing that discrimination" are distinct. *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987). "Sequential claims—claims that are causally related . . . but do not depend on the same facts—are not related for purposes of *Hensley* [*v. Eckerhart*, 461 U.S. 424 (1983)]." *Id.* The decision to cut Dr. Klebe's salary was made at a different time and by different decision-makers than the decisions surrounding the PTEC reviews. Thus, the discrimination and retaliation claims are distinguishable from an evidentiary and preparation standpoint. Even though the retaliation claim necessarily has some connection to the discrimination claim, the two claims are not so interrelated that it would be difficult to distinguish between the work done on each claim. "A plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes . . . conduct that was wrongful." *Id.* at 1246–1247.

More to the point, as noted earlier, Dr. Klebe's counsel made no effort in his attorney's fee request to segregate the work he did on the successful retaliation claim from the work he performed on the myriad other aspects of this case.[7] Instead, he simply asserts that the work on the successful claim was inextricably intertwined with the work on the rest of the case. But that is a fact-intensive question, and whether or not legal work on one claim is inextricable from work on another claim requires actually going through individual time entries and demonstrating the indivisible nature of the work. This is something Dr. Klebe's counsel has failed to do.[8] Because he has failed to demonstrate that the successful retaliation claim involved a common core of facts with, or derived

---

[7]What he does instead is "categorize" the work on various portions of the case. But it is plain that this was not based on an actual item-by-item review of time entries, or any actual "segregation" of time, but rather seems to have been based on little more than arbitrary guesswork. It appears that counsel simply divided the case into several broad categories ("age discrimination," "retaliation," "property rights," "economic damages," and "non-economic damages"), and then assigned equal percentages to each. And just as one example of the seemingly arbitrary nature of these divisions, it is notable that Plaintiff briefed his successful retaliation claim for roughly one page of his 29-page summary judgment brief, while dedicating the remainder of that brief to other claims. *See* Clerk's Doc. No. 47.

[8]Perhaps this is because he cannot. The various unsuccessful claims asserted by Dr. Klebe throughout this lawsuit involved different issues, different law, and different proof than the claims on which he ultimately prevailed. For instance, the issues surrounding Plaintiff's intellectual property dispute had little to do with his retaliation claim, and there was little overlap in the proof necessary to establish the two claims. Similarly, different proof was required for his retaliation claim than was required for his claims regarding constitutional rights of free speech and tenured property rights. And even the age discrimination claim required proof different, to a large extent, from that required to prevail on the retaliation claim. Speaking in general terms, age discrimination requires proof the plaintiff was over 40, was qualified, was demoted despite his qualifications, and was treated differently than other, similarly situated employees under 40; while proof of a retaliation claim requires demonstrating that the plaintiff engaged in protected activity, that he suffered an adverse employment action, and that a causal link exists between the two. In our case, the only point of overlap was on the second element of each claim—specifically, Dr. Klebe's assertion that his salary, after being cut, was kept low both because of his age and as retaliation for his complaining of the perceived age discrimination. As noted, while the jury found that keeping the salary "flat" was retaliatory, it found that the University would have done so even had it not acted with a retaliatory motive, and thus the jury awarded him no damages for this claim.

from legal theories related to, the unsuccessful claims, such that they could all be viewed as a series of related claims, Dr. Klebe should not be awarded all of the legal fees for all of the work done in this case from its inception, as he requests.

    **2.    Billing Judgment and Identifying Recoverable Legal Work**

For the reasons expressed in the preceding section, the Court declines to make use of Plaintiff's categories or methodology in determining the proper amount of fees to award in this case. And this is not the only problem presented by the Plaintiff's submissions. To say that the fee statements submitted with the application were concise might be viewed as kind. In all of the entries covering work done over more than five years, there is hardly a single entry longer than a line of type. Typical entries read: "Letter to client, co-counsel, & opp. counsel," or "Co-Counsel of JAK, research recess limits."

In *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987), the Fifth Circuit explained that billing records that lack explanatory details are unacceptable. In some respects, the billing records submitted in this case fit that description. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983), the Supreme Court noted that when requesting fees, counsel should identify the general subject matter of time expenditures. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. As noted, Plaintiff's billing statements are lacking in details regarding the work done in each entry. While Dr. Klebe's counsel briefly describes the type of work being done, he does not identify the subject matter of what was being worked on, so it is impossible to determine what hours were actually spent on the retaliation claim or the damages related to that claim.

Further, there is no indication that Dr. Klebe's attorney exercised what is known as "billing judgement" in submitting his time to the Court. The party requesting an award of attorney's fees bears the burden of demonstrating the reasonableness of the hours billed and must prove that billing judgment was exercised in reaching this figure. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of hours written off as unproductive, excessive, or redundant." *Id.* All "excessive, duplicative, or inadequately documented" time should be eliminated from an attorney's fee award. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.*; *see also Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."). "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

Plaintiff's only attempt to show that he exercised billing judgment is where he points to his "proposal that attorney fees incurred in pursuit of mixed results be significantly discounted." Pl. Reply, Clerk's Doc. No. 221, at 6. But proposing a reduction to the fees for these claims is not "billing judgment"—it's simply an application of the law that a party not recover fees for unsuccessful claims.[9] Looking to the billing statements, the records contain no indication of the hours the attorneys wrote off as redundant, unproductive, or excessive during this lengthy litigation. And some time entries stand out as certainly in the category of items which should not have survived

---

[9]As noted above, Plaintiff did not achieve "mixed results" on any claims; he prevailed on his retaliation claim, and he was denied relief entirely on all other claims.

the exercise of billing judgment. For example, counsel included time spent for travel to and from his home and his office, time spent being interviewed by a San Antonio newspaper about the trial, as well as reviewing that article once published, and time billed by paralegals and staff for clerical work.[10] Accordingly, a downward adjustment is warranted to account for the vagueness of the fee records, and to account for the billing judgment that should have been exercised and reflected in the fee statements, but was not.[11] Accordingly, a downward adjustment of 15% will be made to account for the vague time keeping and lack of demonstration of billing judgment.

Having identified necessary reductions, to determine the fees to award Plaintiff, the Court will start with identifying the overall hours that are recoverable. As discussed throughout, the claim on which Dr. Klebe prevailed was the retaliation claim. He did not initially make this claim when the case was filed. Indeed, from a review of the pleadings in the case, it appears that the first time a claim of retaliation was made in the lawsuit was when Dr. Klebe filed his second state court suit, on May 17, 2007. That suit added the retaliation claim, and based it upon the unfavorable tenure review that took place in March 2006. A review of the billing statements confirms that in March 2006, Dr. Klebe's counsel appears to have been counseling him related to that tenure review, and discussing with him thereafter making a charge of retaliation. None of the legal work prior to this

---

[10]Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical. *See Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).

[11]In this regard, the Court had to consider the fact that the first jury trial was derailed because of Plaintiff's stroke. Certainly the stroke was not the Plaintiff's fault, but it is equally true that it was not Defendant's fault. Rather, it was an unfortunately-timed medical issue. However, given that it had the effect of requiring that the first trial be stopped, the jury excused, a new jury be selected, and a new trial held, the Court must determine who should bear the cost of the duplication necessitated thereby. On balance, the Court determines that the University should not bear these additional costs caused by Dr. Klebe's health issues, but rather Dr. Klebe should.

time would be recoverable, as all of it would necessarily have been related to claims on which Dr. Klebe did not prevail.[12]

From this time—March 2006—until February 23, 2009, when the Court ruled on the Defendants' summary judgment motions, the case contained the whole panoply of claims discussed earlier. But on February 23, 2009, the Court dismissed a number of Dr. Klebe's claims, and reduced the case to the claims that ultimately went to trial. Accordingly, from February 23, 2009, until the case was tried fully before the jury, September 4, 2009, the Court will assume Dr. Klebe's counsel would have been focused on both the retaliation and the age discrimination claims, but not on the other claims that were dismissed. Finally, from September 5, 2009, after the first verdict was returned, through retrial (which was limited to the issue of mental anguish for retaliation), the Court will assume that all of the attorney's time was dedicated to the retaliation claim.

The Court has made these divisions in an attempt to have some basis on which to segregate work done on the retaliation claim from work done on all of the other unrelated claims. As noted, it would prefer to do this by using detailed billing statements and testimony from the billing attorneys. Given the state of the records and the submission, the Court is hamstrung in this regard, and thus will only be as precise as the record allows. Thus, during the initial period, from March 2006 to February 23, 2009, there were many claims pending, and it is obvious from the record of the case, much time was being spent by Dr. Klebe's attorneys on claims that did not even survive

---

[12]Dr. Klebe also argued that the University's failure to raise his salary after the 2003 reduction was retaliatory. The first mention of this as a claim, however, is found in the Second Amended Complaint filed in federal court, after removal, on September 12, 2008, well after the PTEC retaliation claims were raised. So the "starting point" for the universe of recoverable time is the March 2006 time frame when the retaliation took place, and when Dr. Klebe's attorneys began working on that aspect of his case.

summary judgment. To identify the portion of the fees during this period that related to the retaliation claim, the Court will eliminate 65% of the hours for this period, and assume (generously the Court believes), that the remaining 35% is recoverable retaliation work. For the second period, when the only claims pending were age discrimination and retaliation claims, the Court will increase the recoverable percentage to 60%, given that not only were half of the claims during this time retaliation claims, but there was also some overlap on the damages presentation for the two categories of claims. *See supra* note 7. Finally, for the last period, the time from the first verdict through the retrial on mental anguish damages, up to the present, the Court will assume all of the hours relate to work on the retaliation claim.

The following table collects the attorney and paralegal hours during these three time frames, and then applies the reductions discussed above:

| Time period | Atty time | Paralegal time | Reduction for billing judgment | Reduction to segregate for retaliation | Adjusted Atty Hours | Adjusted Paralegal Hours |
|---|---|---|---|---|---|---|
| 3/2006 - 2/23/2009 | 384 | 301 | 15% | 65% | 114 | 90 |
| 2/24/2009 - 9/4/2009 | 228 | 171 | 15% | 40% | 116 | 87 |
| 9/5/2009 - present | 210 | 70 | 15% | 0% | 179 | 60 |
| **Total** | | | | | 409 | 237 |

Taking the number of hours expended on the successful claim,[13] reducing the number to account for billing judgment and poor record keeping, and multiplying it by the lodestar rate,[14] we get the following figures for attorney hours and paralegal hours, respectively:

409 hours x $300   =   $122,700

237 hours x $75    =   $17,775

**Total:**              **$140,475**

### D.   Johnson adjustment

Finally, the Court is to determine if an adjustment to the lodestar figure is warranted by any of the *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). "The lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006). Furthermore, "[t]here exists a strong presumption of the reasonableness of the lodestar amount." *Id.* In light of the presumptive reasonableness of the lodestar amount, and after considering the factors set forth in *Johnson*, the Court does not believe that an adjustment to the

---

[13] The Court did not include any of Mr. Willman's hours because there are no billing statements from Mr. Willman included in the fee application, as required by Local Rule CV-7(i). *See* Western District Local Rule CV-7 (i) ("The motion shall include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project . . . ."). Mr. Willman merely includes an affidavit that generally describes the work he did for Dr. Klebe throughout the course of this litigation, much of which was clearly unrelated to the successful retaliation claim. This is insufficient to support a claim for attorney's fees, so the Court will not add any additional hours for Mr. Willman's time. Likewise, the Court will not award any fees for the work done by William Hulsey, as all of his work for Dr. Klebe related only to the intellectual property dispute with the University, and had nothing to do with Dr. Klebe's retaliation claims.

[14] The Court finds that a lodestar rate of $300/hour for attorneys and $75/hour for paralegals is reasonable.

lodestar figure is warranted in this case. This was not an unusual employment law case; it did not involve any particularly unpopular or undesirable claims, require special skills, or involve novel legal issues.[15] Accordingly, the Court will award Dr. Klebe the lodestar figure, as determined by the Court above, as his reasonably attorney's fees for his successful claim against the University.

## II. EXPENSES AND COSTS

**A.     Expenses**

In regard to expenses, the University argues that Dr. Klebe is not entitled to be reimbursed for many of the expenses included on the expense billing statement, including expert fees, deposition costs, travel costs, meals, and overhead. Notably, Plaintiff does not address this issue in his reply brief, nor does he provide authority that he is entitled to many of the claimed expenses.

It appears that Texas law generally does not permit the recovery of expenses apart from attorney's fees. "Ordinary expenses incurred by a party in prosecuting or defending suit cannot be recovered either as damages or by way of court costs in the absence of statutory provisions or usages of equity." *Flint & Assoc. v. Intercon. Pipe & Steel*, 739 S.W.2d 622, 626-27 (Tex. App.– Dallas 1987, writ denied) (citing *Hammonds v. Hammonds*, 313 S.W.2d 603, 605 (Tex. 1958)). As the *Flint* court describes it, the general rule is that expenses for:

> photocopy, travel, long distance, postage, and messenger[s] . . . make up the overhead of a law practice, are considered in setting hourly billing rates and reasonable fees, and may be recovered as a component of such fees. . . .  Except as included in reasonable legal fees, there is no basis for recovery of such expenses .

---

[15]Only two issues in this case could be described as novel: the application of the Lilly Ledbetter Fair Pay Act, and the claims relating to "tenure rights," and neither of these pertained to Dr. Klebe's successful claim.

*Flint & Assoc*, 739 S.W.2d at 626-27.  Here, the statute governing attorney's fees makes no explicit provision for the award of expenses.  *See* TEX. LAB. CODE §§ 21.258, 21.259.  A surface reading of *Flint* would thus suggest that Dr. Klebe is not entitled to a separate award for out-of-pocket expenses under Texas law.  Importantly, however, *Flint* was applying TEX. CIV. PRAC. & REM. CODE § 38.001, and not the attorney's fees provisions of the Texas Labor Code.  *See id.*

Under Federal law, on the other hand, the Fifth Circuit "has interpreted the 'attorney's fee' allowed by [Title VII] to include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs."  *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529 (internal marks omitted).  As the undersigned has noted previously in this case, the Texas statute is modeled after federal law, and courts look to analogous federal precedent for guidance when interpreting the Texas Act.  *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).  The fee provision in § 21.259 is similar to that found in Title VII (42 U.S.C. § 2000e-5(k)), so it is reasonable to conclude that out-of-pocket expenses may be recovered as attorney's fees under the Texas statute to the extent they are allowed under Title VII.  The Court will thus apply these principles in awarding expenses here.

While Dr. Klebe is generally entitled to recover his expenses, the Court must again determine the reasonableness of any award of expenses.  Like attorney's fees, expenses must be reasonably necessary, and they must relate to a successful claim in order to be recoverable.  Additionally, charges may be disallowed on the basis of vagueness, inadequate documentation, or failure to substantiate the necessity of such charges.  *See Abner v. Kansas City Southern Ry. Co.*, No. 03-0765, 2007 WL 1805782, at *8–9 (W.D. La. June 21, 2007).  The expense billing statement provided by

16

Dr. Klebe includes many categories of expenses.[16] At the same time that he submitted his expense statements, he also submitted a bill of costs pursuant to FED. R. CIV. P. 54(d)(1). Unfortunately, it appears that he listed all of the items he is seeking as "costs" on both the bill of costs and in his expense requests, leaving it to the Court to segregate from the "expenses" portion of his fee request those items that are properly billed as costs.

Federal law provides that a party awarded its costs in the judgment may recover the following: "(1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; and (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920.[17] A bill of costs is initially assessed by the Clerk of court, not the judge. After the Clerk has assessed such costs, the parties may then file a motion with the court seeking review of the Clerk's actions. Because the expenses and costs have been commingled, and because the University has objected to the expenses, the Court will treat the bill of costs as contested, so as to avoid unnecessary delay in finalizing an award of costs and expenses.

Of the $22,107.07 in expenses listed in Plaintiff's fee request, the following are properly part of his bill of costs, and will thus not be considered here: deposition costs ($3,751.05);[18] exhibit

---

[16]The categories are: "automobile, compact disc, delivery, deposition costs, exhibit expenses, expert witness, fax, filing fees, long distance, meals, mediation fee, miscellaneous, parking, photocopies, postage, records request, service fee, transcript, and travel."

[17]Subsections (5) and (6) of § 1920 are not applicable to this case.

[18]It appears that for bill of costs purposes, this figure should be $3,451.05, as reflected in the attachment to the bill of costs itemizing the deposition costs.

expenses ($2,090.71); filing fees ($692.48); service fees ($400); and transcripts ($2,513). This totals $9,447.24. Expert fees are addressed separately below. Of the remaining expenses, there are many items that should not be included. For example, the "automobile" category ($347.93) appears to contain unspecified gasoline costs, and costs for counsel driving to and from either his Austin office or his home to court. These are not recoverable expenses. Further, most of the expenses under "meals" ($642.81) are not specified, nor is there any information offered to explain why they were necessary to the case. Simply because an attorney is working through lunch, or has dinner brought in, does not mean the expense is reasonable or necessary to the case. Likewise, simply because an attorney meets with his co-counsel over lunch does not make that lunch expense recoverable. "Parking" includes fees for parking at court or related to travel, but also includes parking tickets. The Court cannot reimburse for parking citations, and thus will eliminate that $30 from the expenses. Finally, of the remaining, recoverable expenses, many of the charges predate the assertion of the actionable retaliation claim (*i.e.*, the date of the charges are prior to March 2006), and thus are not recoverable as they necessarily relate to claims on which Dr. Klebe did not prevail. Those are: $92.50 (fax), $7.04 (long distance); $388 (photocopies); $54.28 (postage); and $150 (record request). Starting with the $22,107.07 expense request, and eliminating all of the aforesaid items, the remainder is $10,947.27, and this is the amount that the Court will award as expenses.

**B.     Costs**

As noted, Dr. Klebe has already submitted a bill of costs, and the costs itemized there have been backed out of the expense request as they are properly recovered as costs. As mentioned above, those costs total $9,447.24. Of these costs, a small amount are not reimbursable, as they clearly relate to claims on which Dr. Klebe did not prevail. Those are: "filing fees:" $259 (filing fee for

filing the original 2004 petition in state court, as no claims in that suit were successful); $125 (filing fee for the interlocutory appeal to the Third Court of Appeals, on a claim that was ultimately unsuccessful); and "service fees:" $50 (service fee for original petition). Also, it appears that counsel mistakenly requested $3,751.05 for deposition fees, instead of the $3,451.05 contained on his attached itemization. Adjusting for these amounts, the proper bill of costs total should be $8,713.24. Accordingly, the Court DIRECTS the Clerk to execute the bill of costs with the mentioned reductions, for a total amount of $8,713.24.

**C.     Expert Fees**

As noted above, § 21.259 allows the court, in its discretion, to include reasonable expert fees when awarding costs and attorney's fees. TEX. LAB. CODE § 21.259. Like attorney's fees, expert fees may only be awarded to a prevailing party. *Id.* Expert fees are also recoverable under § 21.125 in cases—like this one—where a plaintiff establishes an unlawful employment practice, but the jury finds that the defendant would have taken the same action in the absence of the impermissible motivating factor. *Id.* § 21.125.

The University argues that the fees Dr. Klebe seeks for his expert, Dr. Nini, are not recoverable because Dr. Nini only testified regarding claims on which Dr. Klebe did not succeed. Contrary to the University's contention, Dr. Nini's testimony did relate, in part, to Dr. Klebe's successful retaliation claim, namely his testimony regarding damages stemming from the University keeping Dr. Klebe's pay constant. These economic damages were a significant part of the damages Dr. Klebe sought for his retaliation claim. The jury found that the University retaliated against Dr. Klebe by keeping his salary constant, but it also found that the University would have taken this action even had they not acted with a retaliatory motive toward Dr. Klebe. Therefore, under

§ 21.125, Dr. Klebe was not entitled to damages or back pay on this aspect of the claim, but as already noted, he is permitted to recover attorney's fees and costs (which includes expert fees) on this claim.

Plainly, an attorney presenting a retaliation claim related to the failure to increase Dr. Klebe's salary would have been remiss had he failed to include testimony regarding the economic harm the alleged retaliation caused Dr. Klebe. In this sense, then, Dr. Nini's testimony was both reasonable and necessary to the retaliation claim, even if the jury ultimately did not award such damages. Dr. Klebe requests a total of $7,312, the full amount invoiced by Dr. Nini. Taking into account that Dr. Nini's testimony related to other claims beside the retaliation, the Court finds that $4,000 of this was reasonable and necessary for the retaliation claim.

### III. CONCLUSION

Based upon the foregoing, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Application for Attorney's Fees and Expenses (Clerk's Doc. No. 212). The Court GRANTS the application for attorney's fees in the following amounts:

| | |
|---|---|
| Attorney's fees: | $140,475.00 |
| Expenses: | $ 10,947.27 |
| Expert fees: | $   4,000.00 |
| **Total:** | **$155,422.27** |

Further, the Court DIRECTS the Clerk to execute the bill of costs in the total amount of $8,713.24. All other relief requested not expressly granted herein is DENIED.

SIGNED this 13th day of April, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE